In the Matter of the Application of AGNES M. ROBERTSON, Appellant, for a Mandamus Order Directed to JAMES D. HOBAN, Treasurer of the City of Buffalo, New York, Respondent.

Fourth Department, June 15, 1936.

*Ethan W. Judd,* for the appellant.

*Gregory U. Harmon, Corporation Counsel [Jeremiah J. Hurley, Assistant Corporation Counsel,* of counsel], for the respondent.

EDGCOMB, J. The mayor and the common council of the city of Buffalo find themselves in disagreement over the amount of maturing bonds which should be refunded. Bonds of the par value of approximately $8,000,000 fall due during the coming year, and are a charge upon the city, and must be paid the same as other debts, by including the amount thereof in the sum to be raised by general tax (General Municipal Law, § 7), or by retiring the obligations, or some part thereof, by an issue of new bonds. (General Municipal Law, § 8; Buffalo Charter, § 350.)

The parties are agreed that a portion of this bonded indebtedness should be refinanced, the dispute is over the amount. In his estimate of receipts for the ensuing fiscal year, as set forth in his proposed budget, the mayor included an item of $2,500,000 for " bonds to be refunded." The common council has attempted to increase this amount to $3,500,000. The mayor refused to approve of the addition. The controversy which has thus arisen makes a difference of $1,000,000 in the amount of money to be raised by taxation, and of $1.04 per $1,000 assessment in the tax rate.

The present Charter of the City of Buffalo (Buffalo Local Laws of 1927, Local Law No. 4, published in Local Laws of 1932) was adopted by a vote of the electors of that city, pursuant to a local law which was enacted in conformity with the provisions of chapter 363 of the Laws of 1924. The charter gives both the mayor and the common council control over the budget, but their authority is separate and distinct, and is clearly defined by the provisions of the act. Neither has any power except as is prescribed by the charter.

The budget originates with the mayor. The head of each department is required to prepare and submit to the mayor, through the division of the budget, an itemized estimate of the money deemed necessary to be raised by general tax to meet the expenditures of such department for the ensuing fiscal year, after crediting the estimated receipts from the operations of the department. (Charter, § 83.) The director of the budget is designated to assist the mayor not only in its formulation, but in assembling, correlating and revising the estimates and requests for appropriations of the departments, boards and agencies of the city. (Charter, § 82.)

The mayor is thus put in close touch with the various departments of the city, and is given a general and comprehensive view of their needs for the ensuing year, and is placed in a position where he can make a close and accurate estimate of the amount of money which it will be necessary to raise by taxation to meet the obligations of the city.

Section 86 of the charter provides as follows:

" On or before the fifteenth day of March next succeeding the mayor shall submit to the council a budget containing a complete plan of proposed expenditures and estimated revenues for the next fiscal year. Therein he shall set forth in detail and summary:

" (a) Estimates of the expenditures necessary in his judgment for carrying on the city government for the ensuing fiscal year.

" (b) Estimates of the receipts of the city during the ensuing fiscal year under laws existing at the time the budget is transmitted and also under the revenue proposals, if any, contained in the budget. * * *

" The budget shall also contain the recommendations of the mayor to the council with respect to any new sources of revenue."

Pursuant to the above provision, the mayor sent to the common council his proposed budget. Among the estimated appropriations is included the total amount of the maturing bonds, both principal and interest, and on the revenue or resources side is an item of $2,500,000 for " bonds to be refunded."

The sole power given to the council in relation to the budget is contained in section 39 of the charter. That section reads as follows:

" At the first meeting of the council, after the submission to it by the mayor of the annual budget, the council shall proceed to a consideration thereof.

" The council may strike out or reduce items therein and may add thereto items of appropriation, * * *.

" If no additions are made by the council, the budget, as passed by it, shall be deemed to have been adopted without any action of the mayor; if, however, the budget, as passed by the council, contains any such additions, it must be presented by the city clerk to the mayor on or before April fifteenth for his consideration of such additions. If the mayor approves all the additions, he shall. affix his signature to a statement thereof and return the budget and such statement to the city clerk. The budget, including the additions as part thereof, shall then be deemed to have been adopted. The mayor may object to any one or more of such added items and in such case shall append to the budget a statement of the added items to which he objects with the reasons for his objections and shall return the budget with his objections to the city clerk who shall present the same to the council at its next stated meeting. The council shall thereupon enter the objections upon its journal and proceed to reconsider the additions so objected to. If upon such reconsideration two-thirds of all the members constituting the council vote to approve such additions, or any of them, notwithstanding the objections of the mayor, the budget with the additions so approved, together with any additions not so objected to by the mayor, shall be deemed to have been adopted. If a budget with additions is not returned by the mayor to the city clerk with his objections within ten days after its presentation to him, it shall be deemed to have been adopted."

Acting within what the council deemed to be its prerogative, it revised said budget by making certain additions, aggregating $54,817, to the appropriations proposed by the mayor (none of which increases are in controversy here), and by adding to the amount of the bonds to be refunded the sum of $1,000,000, making that item $3,500,000 instead of $2,500,000, as suggested by the mayor. The budget was then sent back to the executive head of the city, who assented to the $54,817 addition, but who disapproved the increase in the amount of bonds to be refunded. A motion to approve the addition of the $1,000,000 in the amount of new bonds to be issued, notwithstanding the objections of the mayor, received in the council a vote of eight " ayes " and seven

".noes," and, as it did not receive the two-thirds vote specified in section 39 of the charter, was declared lost.

The city treasurer has been notified that the sum to be raised by taxation is $25,743,480.51, which includes the $1,000,000 above mentioned, and he is now engaged in extending the taxes upon that basis. (Charter, § 532, as amd. by Buffalo Local Laws of 1934, Local Law No. 5.) Claiming that the amount of bonds to be refunded has been legally fixed at $3,500,000, and that, as a result, the budget, as presented to and accepted by the city treasurer, calls for $1,000,000 more money to be raised by taxation than is necessary, the petitioner, a taxpayer of the city of Buffalo, seeks a peremptory mandamus order directing the city treasurer to disregard said item of $1,000,000 in the extension of the taxes upon said assessment roll. Her application has been denied, and she appeals.

We have reached the conclusion that the decision at Special Term is correct, and that the order appealed from should be affirmed.

We may assume that both the mayor and the common council are actuated by proper motives, and are seeking to promote the best interests of the city, and that there is an honest difference of opinion between them as to the best policy to be pursued. We are not concerned with the wisdom of either proposal. The responsibility for the financial management of the city rests upon its officials, and not upon the courts. We are only called upon to construe the various sections of the city charter ·relating to this subject, and our decision rests entirely upon the interpretation to be given to those provisions.

We find no power in the common council to revise the amount of revenue which the mayor estimates will accrue from the refunding of maturing bonds.

Section 39 of the charter gives the council power to " strike out or reduce items," and to add " *items of appropriation.*" There is no authority to *add* any item to the estimated receipts. Whenever section 39 speaks of additions, it refers to items of appropriation and not of revenue. The council has no jurisdiction over the budget except as provided in the charter, and there being no provision in that document permitting that body to add an item to the estimated receipts, it necessarily follows that the mayor's decision is conclusive so far as the credit side of the budget is concerned.

In construing the provisions of the charter, we must assume that the commission which prepared it, and the electors who approved it, understood the words which were used, and intended to employ them in their ordinary and popular sense, and that each word was used deliberately and with a definite purpose of conveying

the meaning which was intended to be imparted by the lawmakers. When, therefore, the council was given power to add items of appropriation to the budget as prepared by the mayor, and nothing was said concerning its right to increase the estimated revenue or receipts, it would seem to follow, under the well-known maxim that the expression of one thing is the exclusion of another (*expressio unius est exclusio alterius*), that no authority was given to that body to increase any item on the credit side of the budget. The court may not read into a law any words or provisions unless good grounds appear for thinking that the lawmakers intended to include something which they have failed to plainly express. No such intention is manifest here.

There would appear to be a good reason why a distinction should be made in the power of the common council to revise the estimates of appropriation, and not of receipts or revenue. There is no provision in the charter to take care of any deficit in the income of the city. The anticipated revenues must materialize, or the budget will not be balanced. The mayor, because of the reports made to him by the heads of the various city departments, and because of his close touch with all the governmental agencies, is possessed of detailed information pertaining to the receipts and revenues likely to be received by the city during the ensuing year, concerning which the council is largely ignorant, and he is, therefore, in a better position to correctly and accurately estimate such sources of income than the council. True, the same thing may, to a certain extent, be said of the allotments for expenses, but appropriations are things which must, in the interest of the taxpayers and of the credit of the city, be held down, and the lawmakers doubtless thought it wise to put a check on the mayor, so that, if that official should become too extravagant or lavish, it would be possible to correct his prodigality, or, on the other hand, if, in attempting to retrench or cut down expenses, he should go too far and fail to provide funds for the proper and efficient running of the city government, that mistake could be corrected by the legislative branch of the municipality. The revenue of the city is largely fixed, and ranges, if at all, within narrow limits, and, if overestimated, throws the financial structure of the city out of balance. Appropriations, on the other hand, fluctuate largely according to the notion or opinion of the official in charge of determining the same, and whatever the total amount may be it is taken care of in the general tax, and the budget is not thrown out of balance.

The item in dispute appears on the credit or revenue side of the budget, and it cannot be successfully claimed that, because the

revenue derived from the refunding of a portion of the maturing bonds reduces the amount to be raised by taxation, it is in reality an item of appropriation. All receipts lessen the burden of taxation.

The charter (§ 83) provides that the comptroller, in the departmental estimate which he is required to furnish the mayor, shall include the amount required to meet the interest and principal accruing during the ensuing fiscal year on bonds and certificates of indebtedness. Such indebtedness is a charge against the municipality, and, as before noted, must be raised by taxation, unless it is taken care of by the issue of refunding bonds. Consequently, it must be included in the mayor's proposed budget among the expenditures necessary to carry on the city government for the ensuing year. (Charter, § 86, subd. [a].)

If there is to be a new issue of bonds to retire a portion of those maturing, that can only be done by a two-thirds vote of the common council. (Charter, § 351, added by Laws of 1930, chap. 614; General Municipal Law, §§ 6, 8.) No such resolution has ever been adopted. The provision in the budget for an estimated revenue from new bonds is but an expression of anticipated hope or purpose, and does not constitute an actual refunding of the indebtedness about to become due until the proper resolution is adopted. It would seem to follow, therefore, that the amount of maturing bonds was properly included in the sum to be raised by the general tax, and was an item of appropriation to meet the necessary expenses of the city.

If, on the other hand, we look upon the action of the common council in directing that $3,500,000 of the maturing bonds should be refunded instead of $2,500,000 as a determination to issue such obligations, the resolution was not passed in conformity with section 34 of the charter, and was, like all other actions with certain exceptions not material here, subject to veto by the mayor, which would be final, unless overridden by a two-thirds vote of the council. (Charter, § 38.) The action of the mayor in disapproving that which the council attempted to do constitutes such veto. It would appear, therefore, that the decision of the council cannot be deemed a reduction or addition of appropriation, but, as before pointed out, an attempt to increase the estimated resources for the ensuing year, over which that body had no control.

Furthermore, if the amount of bonds to be refunded could be said to constitute an item of appropriation, the action of the council is still subject to the disapproval of the mayor, which has not been overcome by a two-thirds vote of the council. (Charter, § 39.)

From any viewpoint which we may take, petitioner cannot succeed in this proceeding, and the order appealed from must be affirmed, with costs.

All concur. Present — SEARS, P. J., TAYLOR, EDGCOMB, THOMPSON and CROSBY, JJ.

Order affirmed, with costs.